CALDBECK TOOL & MANUFACTURING COMPANY, Appellee, v. OMNI-GRAPH MANUFACTURING COMPANY, Appellant.

APPEAL AND ERROR: Scope of Review—Findings of Trial Court. Findings of the trial court having fair support in the record are conclusive on appeal. So held as to a finding that a mechanic had not impliedly guaranteed a successful job.

*Appeal from Des Moines Municipal Court.*—J. E. MERSHON, Judge.

MARCH 14, 1922.

THIS is a simple action on account for services. The defense was: (1) A general denial; (2) an affirmative defense that the work was worthless; (3) a counterclaim to recover money already paid upon the same account, on the ground of failure of consideration and breach of warranty, in that the work failed to produce an efficient instrument, as guaranteed. There was a trial to the court without a jury, and a judgment for the plaintiff for the amount of the account. The defendant has appealed.—*Affirmed.*

*Miller, Kelly, Shuttleworth & Seeburger,* for appellant.

*Brammer, Seevers & Hurlburt,* for appellee.

EVANS, J.—The petition sets forth an itemized statement of account. It shows a balance due of $222, after allowing credits of $300. Though the suit purports to be one between two corporations, the personages involved in the controversy are Caldbeck, the president and general manager of the plaintiff corporation, and Strawn, the secretary and general manager of the defendant corporation. Strawn was an inventor. Caldbeck was an experienced die maker. Caldbeck was employed to make a certain die, with some attachments thereto, to become a part of a somewhat complicated mechanism which Strawn had invented and which he was constructing. The compensation agreed upon for Caldbeck was $1.50 an hour. The affirmative defense and the counterclaim were predicated upon the allegation that Caldbeck was "entirely incompetent to make said die as directed by the defendant." When friction arose between the parties, Caldbeck had not produced a satisfactory or workable result. The plan submitted to him required that certain knives should be built into the die in such a way that they would automatically accomplish an intended result. The machine as a whole was described by Strawn as follows:

"This machine for which these dies were intended does a great many things. It prints the letterhead in two colors, prints the body of the letter in one color, fills in a different name and

address on each letter, signs the letters, prints on the back of it. It cuts out the envelope, puts the gum on it, folds it, prints the return on it, addresses it. It does practically everything to the letter, except print the postage stamp on it. I am one of the inventors of this machine, and my son has assisted me in inventing and developing work. I have been working and developing on it for thirteen years, and it is not on the market even at the present time. At the time Mr. Caldbeck told me this wasn't working, he told me he thought it could be made to work with heavier rollers. * * * He said to me, 'I want to use a larger roller.' "

Caldbeck produced a die, and connected the knives therewith, in attempted pursuance of the inventor's plan. In actual operation, these knives would not do the work. In their movement they had an infinitesimal clearance, said to be one two-thousandth part of an inch. The support of these knives was in the wall of the die cylinder. When the instrument was put in operation, these walls were not sufficiently firm to preserve the clearance of the knives in their operation. That is to say, there was a "give" or "spring" to the wall, which absorbed the clearance, and caused the knives to clog. The remedy suggested by Caldbeck was that heavier walls or rollers would have to be used. It was at this point that friction arose, and the enterprise stopped. The contention for Strawn is that the failure of the knives to work was the result of a mistake by Caldbeck, in that the knives ought to have been built into the very structure of the rollers, and in that Caldbeck had failed to do that, through his own mistake, and in that the only remedy attempted by him thereafter was to insert the knives into place by cutting into the walls, and that such cutting weakened the walls and produced the unfavorable result. Caldbeck's answer to this contention is that under no circumstances could the knives be built into the walls of the roller, because such roller was made of cast iron, whereas the knives had to be made of tool steel and tempered; and that the only way they ever could be put in place would be by the method adopted by himself. To use heavier rollers would require the work to be done all over, and in effect would result in loss of benefit from all the work done,

except the mere benefit of experience.   The roller actually used by Caldbeck was furnished by Strawn for that purpose.

The general contention for the defendant is that the plaintiff impliedly guaranteed a successful job; and this is denied by the plaintiff.   It will be seen from the foregoing that the controversy is one between experts, and that the issue is wholly one of fact.   The record presents little or no opportunity for a review of error by the trial court.   We are bound to adopt its finding of fact, so far as it has support in the evidence.   We have read the record carefully, and see no room for saying that the findings of the trial court lack substantial support.   Even if it were conceded that Caldbeck made a mistake of judgment in adopting the method of attachment of the knives which he did, it would not prove that he was entirely incompetent.   That he was not an incompetent is disclosed by the testimony of Strawn himself, who had employed him for similar work before, and who employed him for this particular work because of his skill.   This is not a case, therefore, where one holds himself out as possessing a skill and experience which he does not have, and thereby induces patronage which he would not otherwise have received.

If we were to assume that a warranty could be implied from the conversation of the parties at the time of employment, still there was no limitation put upon the amount of time or effort which Caldbeck should put upon the enterprise, in order to achieve a successful result.   His pay was to be $1.50 an hour.   If he did not, in fact, achieve a successful result, neither had he finished his work upon the job.   It is not claimed that there was an express warranty on Caldbeck's part.   The case is one where a warranty is not to be too easily implied from mere conversation.   Though Caldbeck was experienced in his line of work, what he was now undertaking to do for Strawn was confessedly experimental.   The article to be fabricated by him was one which he had never made before; nor had anyone else ever made one; neither was there any model furnished to him.   There were pencil sketches made by Strawn and furnished to Caldbeck, and likewise blue prints.   These were introduced in evidence.   They are not presented in the record here, and we have no means, therefore, of interposing our judgment as to how

intelligible they were. Caldbeck concedes, as a witness, that he did not, at the beginning of his work, fully comprehend the blue prints himself. Their absence from this record possibly saves us from a confession of. ignorance which we might have had to make if they were before us. What is clear to us is that the record as presented here would not warrant us in reversing the finding of the trial court. If we were to generalize upon the subject of inventions and experiments, it would not be far from the truth to say that no intricate invention was ever wholly successful in its first fabrication. The skillful mechanic, therefore, should not be too readily charged with negligence or misfeasance because of the failure of his first attempt at making the inventor's ideas mechanically workable.

Sufficient to say that, upon the record before us, we do not find the alleged lack of support therein to the finding of the trial court. Its judgment is, therefore,—*Affirmed.*

STEVENS, C. J., ARTHUR and DE GRAFF, JJ., concur.